IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

A<span>NTHONY</span> L. A<span>LLEN</span>, *et al.*,

    **Plaintiff,**

v.

    Case No. CIV-14-213-JHP

IM S<span>OLUTIONS</span>, LLC, *et al.*,

    **Defendant.**

## OPINION AND ORDER

Now before the Court are the Motion to Dismiss of Defendants IM Solutions, LLC and LeadingResponse [Doc. No. 31], Plaintiff's Response to that motion [Doc. No. 51], and IM Solutions, LLC's and LeadingResponse's Reply Brief in Support of Their Motion to Dismiss [Doc. No. 57]. For the reasons set forth below, Defendants' motion is GRANTED.

## BACKGROUND

According to the Complaint filed on June 3, 2014, Plaintiffs are lawyers and their respective law firms. Plaintiff Anthony Allen is a resident of Muskogee, Oklahoma and practices as a member of the firm of Allen & Wisner, LLC, an Oklahoma limited liability company that has its principal office in Muskogee, Oklahoma. Plaintiff James E. Blount, IV is a resident of Shelby County, Tennessee and practices as a member of the firm of Blount Law Firm, PLLC, a Tennessee limited liability company that has its principal office in Collierville, Tennessee. Blount alleges that he owns the internet domain names "901lawyers.com" and "901lawyers.net;" Allen alleges that his firm's website was hosted under the domain name "oklahomaslawfirm.com" until April 2013, and after that date under the domain name "allenwisner.com." Plaintiffs allege they own common law trademarks to their respective

individual and law firm names and to their website domain names. Plaintiffs allege that their individual and firm names and their respective websites are inherently distinctive marks and are marks that have acquired secondary meaning. The Complaint is filed as a putative class action on behalf of all persons in the United States who provide professional legal services and who utilize the Internet to publicize or advertise their services.[1]

Defendant IM Solutions, LLC ("IMS") is alleged to be a Nevada limited liability company with its principal place of business in Dallas, Texas.[2] Defendant LeadingResponse is alleged to be a limited liability company formed under the laws of an unknown jurisdiction and having its principal place of business in Stamford, Connecticut. However, the O'Sullivan Declaration states that "LeadingResponse" is not a limited liability company but is the assumed name by which RME Group Holding Company, a Delaware corporation ("RME"), does business.[3] For purposes of its discussion, the Court will treat RME as the real party in interest.[4]

Plaintiffs allege that IMS and RME (along with other Defendants) engaged in unfair competition in violation of Lanham Act §43(a), 15 U.S.C. §1125(a), committed deceptive trade practices that violate Okla. Stat. tit. 78, §§51 *et seq.*, tortiously interfered with Plaintiffs' prospective economic advantage protected by common law, and engaged in a civil conspiracy

---

[1] Plaintiffs allege there are sub–classes of plaintiffs who reside and practice law in their respective states, Oklahoma and Tennessee.

[2] In a Declaration ("O'Sullivan Declaration") attached to Defendants' Motion to Dismiss, Robert O'Sullivan, Executive Vice President, Business Development for IMS confirms that IMS is a Nevada limited liability company but states that its principal place of business is in Plano, Texas. The Court notes that Plano is a city in the Dallas–Fort Worth metropolitan area. The difference is not significant to the Court's jurisdictional analysis.

[3] O'Sullivan's statement is reiterated in the Declaration of Charles DallAcqua, RME's Chief Executive Officer ("DallAcqua Declaration"), attached to Defendants' Reply Brief in Support of Their Motion to Dismiss.

[4] The Fictitious Name Certificate for RME attached to the O'Sullivan Declaration (*see* footnote 2) states that RME's principal place of business is in Tampa, Florida. Plaintiffs do not contest that statement. For its jurisdictional analysis, the Court will therefore treat RME as a Delaware corporation having its principal place of business in Florida.

with the other defendants. IMS and RME allegedly did so by causing "pop–up" advertisements to appear on Plaintiffs' websites through which legal services would be solicited for lawyers (but not Plaintiffs) who bought client leads from Defendants. These so–called Lead–Buying Lawyers would pay Defendants for leads to prospective clients looking for legal services. Plaintiffs allege that IMS engages or affiliates with companies that use adware or malware browser plug–ins on the computers of millions of consumers without their authorization or knowledge. When a consumer browses the website of a lawyer who is not one of Defendants' Lead–Buying Lawyers, such as Plaintiffs, these plug–ins cause a form to "pop up" on the consumer's computer screen. The pop–up invites the consumer to provide contact information without indicating that the form is not associated with the website which the consumer is viewing. If the consumer fills in the pop–up form, IMS immediately routes the contact information to Defendant Reed Elsevier, which them promptly calls the consumer and connects the consumer to a representative of the LexisNexis LawyerLocator service, which informs the consumer that he or she will be referred to one of Defendants' Lead–Buying Lawyers. Plaintiff allege that IMS is paid by Lead–Buying Lawyers for each prospect, and IMS in turn pays Reed Elsevier on a per–lead basis.

Plaintiffs allege that Defendants' use of pop–up ads to solicit consumers who are browsing the websites of Plaintiffs and similarly–situated lawyers serves unlawfully to confuse the consumers regarding the origin of the legal services being offered, to pass off the services of Defendants' Lead–Buying Lawyers as those of Plaintiffs, and to divert those consumers who likely sought the services of Plaintiffs to the services of Lead–Buying Lawyers.

Defendants aver in both the O'Sullivan Declaration and in the DallAcqua Declaration that RME is merely a holding company that has no employees and no business operations, and that RME has no connection to Oklahoma in any way. Defendants aver in the O'Sullivan

Declaration and in a Supplemental Declaration by O'Sullivan attached to Defendants' Reply Brief that IMS uses the internet to generate client leads for law firms and advocacy groups, but that IMS does not generate leads by placing or causing others to place pop–up ads on individual computers. IMS avers that it does not download adware or malware to computer users' browsers, and it has not authorized or directed any third person or entity to do so. IMS denies that the pop–ups copied in Plaintiffs' Complaint were authorized or directed by IMS. According to O'Sullivan, over 90% of the leads obtained by IMS are from websites maintained by IMS; less than 10% are leads purchased from other lead generators, and IMS is not involved in the generation of those other leads.

With respect to its contacts with Oklahoma, IMS avers that none of its computer servers is located in Oklahoma. IMS's websites are accessible through the internet anywhere in the world. IMS does not have any Oklahoma–specific advertisements or websites. IMS has two law firm customers based in Oklahoma. One of the firms purchases approximately 200 social security disability and automobile accident leads per month; the other firm purchases approximately 60 leads a month related to automobile accidents and other areas of the law. Together, the two Oklahoma law firms generate approximately 0.8% of IMS's total revenue. IMS does not sell any product or service to individuals in Oklahoma, through its websites or otherwise. It does not have any offices or employees in Oklahoma, does not have any Oklahoma bank accounts, and does not own any real or personal property in Oklahoma. Representatives of IMS do not regularly travel to Oklahoma, and their limited travel to this state has been to one of the law firms that purchases leads IMS has generated through its websites.

In their Reply, Plaintiffs challenge the credibility of O'Sullivan, primarily on the ground that in his relatively short tenure as an officer of IMS he could not have personal knowledge of

the facts contained in his Declaration.[5] In addition, Plaintiffs point out what they perceive to be inconsistencies in the jurisdictional facts presented by Defendants. Whatever the shortcomings Plaintiffs perceive in the O'Sullivan Declaration and Supplemental Declaration, Plaintiffs present no evidence of their own to controvert O'Sullivan's statements under oath.[6] Rather, Plaintiffs argue that their complaint contains sufficient allegations of fact to demonstrate that Defendants have continuous and systematic contacts with Oklahoma enough to confer general jurisdiction and, in any event, have directed their infringing activities to Oklahoma in a way that confers specific jurisdiction.

**ANALYSIS**

The purpose of allowing a jurisdictional challenge such as the one raised here is to protect a defendant who has no meaningful contact with a state from being forced to litigate in an unfamiliar and potentially unfair forum. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998); *Outdoor Channel, Inc. v. Performance One Media, LLC*, 826

---

[5] The cases cited by Plaintiffs, *Hollander v. American Cyanamid Co.*, 999 F. Supp. 252 (D. Conn. 1998), *aff'd*, 172 F.3d 192 (2nd Cir. 1999), *abrogated on other grounds in Schnabel v. Abramson*, 232 F.3d 83 (2nd Cir. 2000), and *Ramada Franchise Systems, Inc. v. Tresprop, Ltd.*, 75 F. Supp.2d 1205 (D. Kan. 1999), are not persuasive that O'Sullivan's two declarations should be stricken. The plaintiff's affidavit in *Hollander* was stricken because it was "riddled with inadmissible hearsay, conclusory statements and arguments, and information clearly not made on the affiant's personal knowledge [and it] more resembles an adversarial memorandum than a *bona fide* affidavit." 999 F. Supp. at 256. In *Ramada Franchise*, an affidavit submitted by the defendants was stricken to the extent it purported to state the beliefs and intentions of third parties, because it was not self–evident from the affidavit that those beliefs and intentions were within the personal knowledge of the affiant. Here, O'Sullivan is Executive Vice President (and soon to be President) of IMS. Officers of a business organization are generally treated as having personal knowledge of the organization's acts, regardless whether they personally performed or participated in them. *See*, *e.g.*, *Philbrick v. ENom, Inc.*, 593 F. Supp.2d 352, 354 (D. N.H. 2009) (citing cases).

[6] Plaintiffs offer the Declaration of Scott A. Kamber, one of Plaintiffs' counsel, to which are attached as exhibits five screen captures from RME, IMS, or other websites. To the extent those exhibits suggest O'Sullivan's knowledge about RME is limited, any deficiency appears to be cured by the DallAcqua Declaration. In any event, the court concludes that none of the five exhibits places any of the statements in the O'Sullivan Declaration or the O'Sullivan Supplemental Declaration into material dispute for purposes of the court's jurisdictional analysis.

F. Supp.2d 1271, 1278 (N.D. Okla. 2011). The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on pleadings and affidavits, that burden can be met by a prima facie showing. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011); *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1069–70 (10th Cir. 2008).

To establish personal jurisdiction over Defendants, Plaintiff must show that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process. *Fireman's Fund Ins. Co. v. Thyssen Min. Const.*, 703 F.3d 488, 492 (10th Cir. 2012) (citing *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)); *Monge v. RG Petro–Machinery (Group) Co., Ltd.*, 701 F.3d 598, 613 (10th Cir. 2012) (same); *Outdoor Channel* at 1278 (same). Where, as in Oklahoma, the state long–arm statute supports personal jurisdiction to the full extent constitutionally permitted, due process principles govern the inquiry. To exercise personal jurisdiction in harmony with due process, Defendants must have "minimum contacts" with the forum state, such that having to defend a lawsuit there would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Such contacts may give rise to personal jurisdiction over a non–resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum–related activities. *Shrader* at 1239.

General jurisdiction is based on an out–of–state defendant's continuous and systematic contacts with the forum state, and does not require that the claim be related to those contacts. Specific jurisdiction, on the other hand, is premised on something of a *quid pro quo*. In exchange for benefitting from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts. *Id.*;

6

*Dudnikov* at 1078.

In contrast to the single, overarching requirement of continuous and systematic contacts for general jurisdiction, the "minimum contacts" test for specific jurisdiction encompasses two distinct requirements: "first, that the out–of–state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum–related activities." *Shrader* at 1239; *Dudnikov* at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). *Accord*: *Monge* at 613–614; *OMI Holdings* at 1091.

The Supreme Court recently assayed the scope of general and specific jurisdiction, and the differences between them. *Daimler, AG v. Bauman*, 571 U.S. \_\_\_, 134 S.Ct. 746 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. \_\_\_, 131 S.Ct. 2846 (2011). In *Daimler*, the Court observed that "[s]ince *International Shoe*, 'specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction has played a reduced role.'" 134 S.Ct. at 755 (quoting *Goodyear*, 131 S.Ct. at 2854). Both *Daimler* and *Goodyear* make clear that a court does not have general jurisdiction over out–of–state (or foreign) business organizations unless "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler* at 754; *Goodyear* at 2851. "'For an individual, the paradigm forum is the individual's domicile; for a corporation, it is the equivalent place, one in which the corporation is fairly regarded as at home.' With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m]. . . bases for general jurisdiction.' Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Daimler* at 760 (quoting *Goodyear* at 2853–54) (other internal citations omitted).

Neither *Daimler* nor *Goodyear* held "that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business; [they] simply typed those places paradigm purpose forums. [However, a formulation that would allow] the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business' . . . is unacceptably grasping." *Daimler* at 760–761. "[T]he inquiry under *Goodyear* is not whether a foreign corporation's in–forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler* at 761 (quoting *Goodyear* at 2851).[7] Tenth Circuit authority is generally in accord. *See Fireman's Fund Ins.* at 493 (quoting *Goodyear* at 2851). *Cf. Shrader* at 1243 ("contacts must be of a sort that 'approximate physical presence' in the state—and 'engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders'") (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).

A. **General jurisdiction.**

Applying *Daimler* and *Goodyear* to the facts of this case, it is clear that this court does not have general jurisdiction over either of Defendants. RME is a Delaware corporation with a principal place of business in Florida. It is "at home" in either of those two states, but not Oklahoma. Plaintiffs have not alleged any facts that would suggest that RME has such continuous and systematic contacts with Oklahoma as to render it "at home" in this forum. Indeed, DellAqua's uncontested declaration that RME has no employees and no business operations anywhere would negate any suggestion that RME would be subject to general

---

[7] The Court noted that the use of the phrase "continuous and systematic" in *International Shoe* was in reference to specific, not general, jurisdiction, and the phrase was used to describe in–forum activities that gave rise to the claims. *Daimler* at 761.

8

jurisdiction here.

The same may be said for IMS. As a limited liability company organized under the laws of Nevada and having its principal place of business in Texas, it would be "at home" in those two states. IMS is, for jurisdiction purposes, also considered to be a citizen of the states where its members are incorporated and have their principal places of business.[8] According to the uncontested DallAcqua Declaration, RME is IMS's sole member. IMS would therefore be considered "at home" in Delaware and Florida as well as Nevada and Texas, but not Oklahoma. No activity of IMS alleged in the complaint or described in the declarations of IMS's officers is sufficient to approximate a physical presence or otherwise be "at home" in this state. IMS does not maintain any office or employ any persons in Oklahoma. It owns no property and has no banks accounts in this state. That IMS operates websites accessible in Oklahoma does not confer general jurisdiction. *Shrader* at 1241; *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999).

Plaintiffs' argument that because IMS generates and sells hundreds of leads to Oklahoma lawyers each month its commercial activities in this state are "continuous and systematic" rather than "random, fortuitous, or attenuated" is unavailing. The fact that IMS has continuing

---

[8] The Tenth Circuit has not specifically ruled with respect to the method of determining the citizenship of a limited liability company for comparable purposes of diversity jurisdiction. *But cf. Shell Rocky Mountain Production, LLC v. Ultra Resources, Inc.*, 415 F.3d 1158, 1162 (10th Cir. 2005) ("It is undisputed that Shell is a Delaware limited liability corporation (LLC) and its principal place of business is Houston, Texas. Thus, Shell is a citizen of both Delaware and Texas."). However, every other circuit court that has addressed the question has determined that the citizenship of a limited liability company is the citizenship of its members. *See D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 125 (1st Cir. 2011); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *General Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114,121 (4th Cir. 2004); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828 (8th Cir. 2004); *Rolling Greens MHP v. Comcast Sch. Holdings*, 374 F.3d 1020, 1022 (11th Cir. 2004); *Belleville Catering Co. v. Champaign Market Place, LLC*, 350 F.3d 691, 692 (7th Cir. 2003); and *Handelsman v. Bedford Village Associates Ltd. Partnership*, 213 F.3d 48, 51–52 (2nd Cir. 2000); *see also*, 15 Moore's Federal Practice §102.57[8] (3d ed. 2013).

business relationships with two Oklahoma law firms is not itself sufficient to confer general jurisdiction over IMS in an Oklahoma court. *Outdoor Channel* at 1296 (six ongoing contracts with Oklahoma entities not sufficient to confer general jurisdiction over Colorado–based entity) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984)). *Cf. Monge* at 616–17, 620 (multiple sales of oil rigs, exchange of emails and a visit to Oklahoma by a representative, a website and phone numbers accessible in Oklahoma, and revenue from another Oklahoma customer insufficient to confer general jurisdiction over Chinese manufacturer); *Shrader* at 1243–44 (purchases by plaintiff and another Oklahoma resident of books and other materials from defendant, and defendant's advertising in an Oklahoma magazine insufficient to confer general jurisdiction) (citing cases); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080–81 (10th Cir. 2004) (contract negotiations and two dozen "spot market" transactions with Colorado resident over several years insufficient to confer general jurisdiction in Colorado over Canadian company).

And *Daimler* rejects the concept that a business organization is "at home" in a given state merely because it does significant business there. In *Daimler*, jurisdiction in a California federal court over Daimler, a German public stock company, was predicated on the California contacts of Mercedes–Benz USA, LLC ("MBUSA"), a Daimler subsidiary incorporated in Delaware with its principal place of business in New Jersey that distributes Mercedes–Benz vehicles to independent dealers throughout the United States, including California. The Court held that MBUSA (and therefore Daimler) was not "at home" in California despite MBUSA's "sizable" sales there, concluding that if "Daimler's California activities sufficed to allow adjudication of this Argentina–rooted case in California, the same global reach would presumably be available in every State in which MBUSA's sales are sizable." *Daimler* at 761. The Court described the

exercise of general jurisdiction on that basis as "exorbitant" and inconsistent with principles of due process. *Id*. Plaintiffs' complaint alleges and their arguments opposing Defendants' motion to dismiss concede that IMS's alleged lead–generating activities are carried on throughout the United States. In the present case, even if IMS's lead generation and sales to Oklahoma lawyers could be described as "sizable," that is still insufficient to confer general jurisdiction over IMS in this state.

### B. Specific jurisdiction.

If this court is to exercise its jurisdiction over either RME or IMS, it may do so only if its jurisdiction is "specific." "Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. . . . In contrast to general, all–purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear* at 2851 (internal quotations and citations omitted). As stated above, to exercise jurisdiction in harmony with due process principles, Defendants musts have "minimum contacts" with Oklahoma, such that defending a lawsuit here would not offend traditional notions of fair play and substantial justice. *Int'l Shoe* at 316; *Shrader* at 1239; *Dudnikov* at 1070; *OMI Holdings* at 1091.

The "minimum contacts" required by due process principles "for specific jurisdiction entails two distinct requirements: 'first, the out–of–state defendant must have "purposefully directed" its activities at residents of the forum state, and second, that the plaintiff's injuries must "arise out of" defendant's forum–related activities.'" *Shrader* at 1239 (quoting *Dudnikov* at 1071). *Accord*: *OMI Holdings* at 1091; *Outdoor Channel* at 1280. As this court explained in *Outdoor Channel* at 1280:

> The purpose of the "purposeful direction" component is "to ensure that an out–of–state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*, 514 F.3d at 1072 (quoting *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174). The "arise out of" factor requires that there be a causal connection between the defendant's activities in the forum and the lawsuit. *See id*. at 1078.

However, "even if the 'purposeful direction' and 'arising out of' conditions for specific jurisdiction are met, that is not the end of the matter. '[The court] must still inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.'" *Shrader* at 1240 (quoting *Dudnikov* at 1080); *OMI Holdings* at 1091.

Plaintiffs' claims in this case arise from the alleged internet–based activity by Defendants. The Tenth Circuit first addressed personal jurisdiction in the internet context in *Shrader*. The court said it was "untenable" to base personal jurisdiction on the accessibility of a website in a given state, because "the internet operates 'in' every state regardless of where the user is physically located, potentially rendering the territorial limits of personal jurisdiction meaningless." *Shrader* at 1240. To avoid that untenable result, an internet user is subject to personal jurisdiction only if the user or website "*intentionally direct[s]* his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." *Id*. (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc*., 293 F.3d 707, 712 (4th Cir. 2002)) (emphasis by court). Moreover, *Shrader* held that it is not enough for personal jurisdiction if the internet conduct on which the plaintiff's claim is based is merely targeted to a known resident of the forum; "*the forum state itself must be the focal point of the tort*." *Id*. at 1244 (quoting *Dudnikov* at 1074 n.9) (emphasis by court).

Applying these principles to the facts of this case, it is clear that this court does not have specific jurisdiction over either of Defendants. The personal jurisdiction issue in this case turns on the lack of "purposeful direction" of Defendants' alleged conduct. "In considering whether

the defendants purposefully directed their activities toward [the forum state], 'we must examine [both] the quantity *and* quality of [their forum] contacts.' *OMI Holdings*, 149 F.3d at 1092. One way to conduct this analysis in tort cases is to consider the 'effects test' of *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), where purposeful direction is established if three showings are made: the defendant (a) commits 'an intentional action'; (b) that is 'expressly aimed at the forum state'; © with 'knowledge that the brunt of the injury would be felt in the forum state.' *Dudnikov*, 514 F.3d at 1072; *see Shrader*, 633 F.3d at 1240–41; *accord Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir. 2012)." *Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed.Appx. 86, 96 (10th Cir. 2012). With respect to content on the internet, "courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Shrader* at 1241.

With respect to RME, the court does not have specific jurisdiction. RME is a holding company. DellAqua's uncontested declaration that RME has no employees and no business operations anywhere would negate (just as it did with respect to general jurisdiction) any suggestion that RME would be subject to specific jurisdiction here. The complaint does not identify any particular intentional act of RME, and certainly none expressly aimed at Oklahoma as the forum state.[9]

---

[9] Although the complaint identifies "LeadingResponse" (RME) as "purportedly a limited liability company" (Compl. ¶11), the substantive allegations of the complaint do not differentiate between alleged conduct of RME and alleged conduct of IMS (Compl. *passim*). Yet a plaintiff must establish specific jurisdiction with respect to *each* defendant. *Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually."); *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of International Shoe, however, must be met as to each defendant over whom a state court exercises jurisdiction."). *See*, *e.g.*, *Fireman's Fund* at 493 (jurisdiction as to one defendant did not extend to other defendant); *OMI Holdings* at 1092 (jurisdiction over foreign defendant not permitted if based on unilateral acts of someone other than defendant). RME's status as IMS's sole member does not confer jurisdiction over RME even if the court were to have jurisdiction over IMS. *See*, *e.g.*, *Garshman v. Universal Resources Holding, Inc.*,

Neither does this court have specific jurisdiction over IMS. The O'Sullivan Declaration and Supplemental Declaration and the DallAcqua Declaration all aver that IMS (and RME for that matter) has no involvement in the pop–up ads about which Plaintiffs complain, either generating those pop–ups itself or directing others to do so. However, crediting the allegations of the complaint that IMS is somehow involved in creating those pop–ups, the complaint fails to demonstrate that IMS's allegedly intentional conduct is "expressly aimed at the forum state" with "knowledge that the brunt of the injury would be felt in the forum state," a demonstration that is required if specific jurisdiction is to be acquired consistent with due process.

Plaintiffs' complaint alleges that IMS "serves over 200 Lead–buying Lawyers across all 50 states." Compl. ¶41. IMS allegedly creates leads by "engag[ing] or affiliat[ing] with companies that display online advertisements by using adware or malware browser plug–ins surreptitiously downloaded to the computers of millions of consumers and activated without the consumers' authorization." Compl. ¶43. These browser plug–ins allegedly cause a form to pop–up on the consumer's computer screen when that consumer is browsing the web for a lawyer. Compl. ¶¶3, 43. The pop–up form invites the consumer to "Get legal advice" by filling in contact information which IMS allegedly routes to Defendant Reed Elsevier, which then promptly calls the consumer and connects the consumer to a representative of the LexisNexis LawyerLocator service, which informs the consumer that he or she will be referred to one of Defendants' Lead–Buying Lawyers. Compl. ¶¶3–4, 43–47. Plaintiffs allege that these pop–ups

---

641 F. Supp. 1359, 1364–65 (D. N.J. 1986), *aff'd on other grounds*, 824 F.2d 223 (3rd Cir. 1987) (New Jersey court did not have jurisdiction over Delaware corporation whose wholly–owned subsidiary did business in New Jersey, despite public statements that parent company monitored subsidiary's development; "a parent may monitor or review a subsidiary's policies and business decisions 'without destroying its corporate separateness for jurisdiction purposes.'") (citation omitted). In this case, there is no allegation or evidence that RME, an employee–less holding company, exercises such control over IMS that it is subject to jurisdiction wherever IMS might be. The exhibits Plaintiffs offer as attachments to the Kamber Declaration do not alter this conclusion.

have appeared on top of their websites, Compl. ¶¶2, 33, 65, but (as part of their class allegations) Plaintiffs allege that the websites of "hundreds, if not thousands, of individuals and entities in the Unites States" offering legal services have been impacted. Compl. ¶78.

These allegations clearly describe alleged conduct intentionally targeted not to Oklahoma as a forum, or particularly to Plaintiffs in Oklahoma and Tennessee, but to millions of consumers throughout the United States. In due process terms applicable to a specific jurisdiction analysis, the allegedly "intentional conduct" of IMS is not "expressly aimed at the forum state" with "knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov* at 1072. *See Shrader* at 1241 ("deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state"). Indeed, the allegations point to just the opposite. They describe conduct that is not targeted to Oklahoma or any other particular state, but conduct that is directed at consumers across the country, with the expectation that if the pop–ups generate leads that divert consumers from the websites over which the ads appear, the lawyers impacted by that alleged diversion would not be just the plaintiffs, or other lawyers in Oklahoma, but lawyers who practice in virtually every jurisdiction in the United States.

Plaintiffs argue that this case is distinguishable from *Shrader*, but conceptually it is not. In *Shrader*, neither the operators of a web–based discussion forum (the Beann defendants), nor those posting an email message on the forum that was allegedly defamatory to the plaintiff (the Stewart defendants), nor the person who forwarded the email to another forum member (Biddinger) expressly directed their activities to Oklahoma. "On the contrary, Mr. Shrader's pleadings stressed the forum's *non*–local nature, repeatedly referring to the fact that it drew an audience from all over the world." *Shrader* at 1242. Plaintiffs' pleading in this case stresses that

15

Defendants' alleged conduct of infecting consumers' computers with adware that causes a pop–up to appear when the consumer is browsing for legal services is directed to consumers throughout the United States. Defendant's conduct, even if intentional, is not allegedly targeted to Oklahoma generally or Plaintiffs particularly; it is allegedly "expressly directed" to millions of consumers throughout the country. Oklahoma is no more a state to which Defendants' conduct is allegedly directed than any other state. *Cf. Outdoor Channel* at 1281 ("[T]his court concludes that POM's transmission of ICTV programming to DirectTV and DISH Network, who then broadcast that signal to the entire United States, pursuant to contract, does not demonstrate that POM 'purposefully directed its activities' at residents of Oklahoma."). *Shrader* makes clear that a "plaintiff's residence in the forum state, and hence suffering harm there, does not alone establish personal jurisdiction over a defendant who has not purposefully directed his activities at the state." *Shrader* at 1245.[10]

The jurisdictional deficiency of Plaintiffs' complaint is not saved by their allegations of conspiracy among the defendants. Plaintiffs allege, in rather conclusory terms, that Defendants conspired with Defendants Reed Elsevier and Internet Brands "to perpetrate against Plaintiffs and the members of the general consuming public seeking legal counsel, for Defendants' own financial gain," the conduct alleged in the complaint. Compl. ¶122.[11] In general, Plaintiffs allege, "Defendants' actions were coordinated and recurring, with each Defendant performing an

---

[10] It naturally follows that a plaintiff's claim cannot "'arise out of' defendant's forum–related activities," *Shrader* at 1239—the second element of specific jurisdiction—if the activities are not purposefully directed at the forum state.

[11] It should be noted that RME and IMS are not alleged to have conspired with each other; Plaintiffs describe them as "operationally indistinguishable," Compl. ¶12, and Plaintiffs do not allege any specific acts of one entity independent of the other. Moreover, RME is a non–operating holding company that is the sole member of the limited liability company IMS. DallAcqua Declaration ¶¶3, 5. As such, it is unlikely that RME is legally capable of conspiring with IMS, but in any event Plaintiffs do not allege that it did. Likewise, Plaintiffs treat Defendants Reed Elsevier and Internet Brands singularly, and allege that they operated as a joint venture during the salient period. Compl. ¶¶15, 75. Accordingly, any alleged conspiracy must be between IMS and Reed Elsevier.

essential role in the overall scheme to display Pop–Ups to prospective clients visiting Plaintiffs" websites, collect prospective clients' personal information, promptly communicate with prospective clients and with each other to further the diversion of prospective clients and, ultimately, divert prospective clients to Lead–buying Lawyers." Compl. ¶122. However, "[t]hese are just the sorts of allegations *Dudnikov* directs us not to consider, as it pointedly limits the facts that must be accepted for purposes of the jurisdictional analysis to those 'well–pled (that is, plausible, non–conclusory, non–speculative) facts alleged in plaintiff['s] complaint,' 514 F.3d at 1070 (citation omitted). As we have held elsewhere, '[i]n order for personal jurisdiction based on a conspiracy theory to exist, the plaintiff must offer more than "bare allegations" that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy.' *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007) (quoting *Lolavar v. de Santibanes*, 430 F.3d 221, 229 (4th Cir. 2005))." *Shrader* at 1242.

Moreover, even in an alleged conspiracy, minimum contacts with the forum must be met as to each defendant. *Melea* at 1070 ("Due process requires that [a non–resident co–conspirator] itself have minimum contacts" with the forum state.). For the reasons already discussed, Plaintiffs have failed to allege that these Defendants had sufficient minimum contacts with Oklahoma to support specific jurisdiction. Adding an allegation that Defendants conspired with others does not solve Plaintiffs' pleading dilemma.

As outlined at the beginning of the court's analysis, Plaintiffs must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process, that is, that forcing Defendants to defend a lawsuit there would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Thus, even when sufficient minimum contacts exist, a court must

determine whether the assertion of personal jurisdiction comports with due process. *Dudnikov* at 1080. This inquiry considers five factors:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

*Id.* (brackets omitted). *See also AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008); *TH Agriculture & Nutrition, LLC, v. ACE European Group Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007); *Trujillo v. Williams*, 465 F.3d 1210, 1221 (10th Cir. 2006); *OMI Holdings* at 1095; *Outdoor Channel* at 1290.

However, because this court has concluded that Defendants do not have sufficient "minimum contacts" with this forum to support the exercise of personal jurisdiction, it is unnecessary to analyze these five factors to determine whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *See Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1299 n.1 (10th Cir. 1999) ("Because we conclude that Soma has failed to establish that SCB has minimum contacts with the state of Utah, we need not proceed to the next step of the due process analysis, i.e., whether the exercise of personal jurisdiction over SCB would offend 'traditional notions of fair play and substantial justice.' [citation omitted]."). *Cf. Shrader* (contacts with forum insufficient for jurisdiction; court did not discuss five factors) *with OMI Holdings* ("limited" contacts with forum required consideration of five factors) and *Outdoor Channel* (court discussed five factors because "one weak, specific contact exists between POM and Oklahoma").[12]

---

[12] The court observes that most of the factors would appear to be relatively neutral; but the first factor—the not immodest burden on Defendants (who appear most likely "at home" in Texas) in defending a suit in Oklahoma—would seem to weigh, at least slightly, in Defendants' favor. *See, e.g., TH Agriculture, supra*, 488 F.3d at 1292 ("[W]hile modern advances may minimize the burden

C.  **Jurisdictional discovery.**

One final matter must be addressed. In responding to Defendants' motion, Plaintiffs seek leave to conduct jurisdictional discovery if the court relies on the O'Sullivan Declaration. Describing it as a "flimsy proffer," Plaintiffs argue that they would be prejudiced if the court rules on the motion in reliance on the Declaration without affording Plaintiffs the opportunity to conduct discovery concerning "Defendants' Oklahoma contacts in relation to its conduct regarding Pop–Ups appearing in Oklahoma." Doc. No. 51 at 25. The court has considered O'Sullivan's Declaration (as well as his Supplemental Declaration, along with the DallAcqua Declaration) only with respect to the forms of organization and places of business of RME and IMS, their relationship (as parent holding company and subsidiary limited liability company), and their lack of employees or physical assets in the state of Oklahoma. Plaintiffs do not appear to take issue with those facts stated in O'Sullivan's submissions. As the court's analysis above reflects, it has disregarded O'Sullivan's Declaration and Supplemental Declaration with respect to IMS's alleged role in the generation of the pop–ups about which Plaintiffs complain. The court has, instead, credited Plaintiffs' allegations in that regard. The court has nevertheless concluded that the facts, as alleged by Plaintiffs, do not support the exercise of personal jurisdiction, for the reasons the court has explained. It does not appear to the court that the jurisdictional discovery proposed by Plaintiffs would alter their allegations in a way that might significantly change the court's analysis. Accordingly, the court denies Plaintiff's request.

---

on the Insurers, they are not significant enough to tip the scales in favor of exercising jurisdiction."); *Western World Insurance Co. v. Nonprofits' ins. Alliance of California*, No. CIV–13–216–KEW, 2014 WL 1282254, *4 (E.D. Okla. Mar. 27, 2014) ("NIAC's offices, records, employees, and witnesses are all based in the State of California. While modern technology and transportation might minimize the impact of this fact, it does not tip the scales in favor of exercising jurisdiction."). However, as stated, it is not necessary under the circumstances to explore these factors.

### D. Conclusion.

Based on the foregoing, Defendants' Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction [Doc. No. 31], is **GRANTED**. The claims of Plaintiffs Anthony L. Allen, Allen & Wisner, LLC, James E. Blount, IV, and Blount Law Firm, PLLC against Defendants IM Solutions, LLC and RME Group Holding Company ("LeadingResponse") are dismissed for lack of personal jurisdiction.

**IT IS SO ORDERED this 6th day of January, 2015.**

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma