IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ANTHONY L. ALLEN;
ALLEN & WISNER, LLC;
JAMES E. BLOUNT, IV; and
BLOUNT LAW FIRM, PLLC,
individually and on behalf of
all others similarly situated

    Plaintiffs,

v.

Case No. 14-CV-00213-JHP

IM SOLUTIONS, LLC;
LEADINGRESPONSE, LLC;
REED ELSEVIER INC.; and
INTERNET BRANDS, INC.,

    Defendants.

## **OPINION AND ORDER**

Now before the Court is Defendant Reed Elsevier Inc.'s Motion to Dismiss Counts I, III and IV of the Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). (Dkt. No. 21). For the following reasons, the Court grants Defendant Reed Elsevier Inc.'s Motion to Dismiss.

### I.    BACKGROUND

This lawsuit arises out of pop-up advertisements for legal services that appear on Plaintiffs' websites. Plaintiffs Allen & Wiser, LLC and Blount Law Firm PLLC are law firms located in Oklahoma and Tennessee respectively. Plaintiffs Anthony L. Allen and James E. Blount, IV are lawyers and members of those respective law firms (collectively the "Plaintiffs"). According to the Complaint, Defendants IM Solutions ("IMS") and LeadingResponse, LLC ("RME") are limited liability corporations engaged in the business of using the internet to generate leads for law firms to obtain potential clients. Further, according to the Complaint,

Defendant Reed Elsevier Inc. ("Reed") is the owner and operator of LexisNexis Martindale Hubbell, Lawyers.com, Attorneys.com and LawyerLocator. (Compl. ¶ 13). Defendant Internet Brands, Inc. ("Internet Brands") owned and operated Nolo Legal divisions and over 150 web properties providing marketing services for lawyers and consumer-facing legal information. (Compl. ¶ 14). The Complaint also alleges that Reed and Internet Brands created a joint venture combining its above-described business with Internet Brands' online marketing services. (Comp. ¶ 15).

Plaintiffs filed their four-count Class Action Complaint against Defendants on June 3, 2014. (Dkt. No. 3). In the Complaint, Plaintiffs claim three distinct causes of action against Reed: violations of the Lanham Act, 15 U.S.C. § 1125(a) (Count I); tortious interference with prospective advantage under Oklahoma and Tennessee law (Count III); and (3) civil conspiracy (Count IV).[1] For purposes of ruling on a motion to dismiss, the Court considers the allegations of the Complaint to be true.

The Complaint alleges that IMS generates its client leads by utilizing a "hidden browser plug-in," placed on consumers' computers by unnamed "affiliates" through advertising, referred to as "adware" or "malware" plug-ins. (Compl. ¶¶ 3, 43). The plug-ins cause a pop-up window to appear in a separate window when one of these consumers visits the websites of Plaintiffs. (Compl. ¶ 42, 44). If a consumer clicks on the first pop-up window that appears, a second pop-up window appears setting forth a questionnaire about the legal services the consumer seeks. (Compl. ¶ 46). Upon completing the questionnaire and clicking "Speak to lawyers," the results are routed to Reed and Reed places a telephone call to the consumer. (Compl. ¶ 47). Following

---

[1] Plaintiffs bring a fourth cause of action (Count II) under the Oklahoma Deceptive Trade Practices Act against IM Solutions.

the phone call, Reed sends an email to the consumer referring them to IMS who matches the consumer with a law firm. (*Id.*) Plaintiffs allege that this lead generating process improperly diverts potential customers away from Plaintiffs' websites, allowing Defendants to capture the business.

The function of a motion to dismiss is to assess the legal feasibility of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). When deciding a motion to dismiss, the Court must accept all well-plead allegations as true and draw all reasonable inferences in favor of the pleader. *Id.* The Court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *Southern Disposal, Inc. v. Texas Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). In other words, the complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff is obligated to amplify a claim with some factual allegations to allow the Court to draw the reasonable inference that the defendant is liable for the alleged conduct. *Ashcroft*, 556 U.S. at 677.

## II.  DISCUSSION

### A.  The Lanham Act

Reed argues that under no factual scenario could any claim arise under the Lanham Act against Reed. Specifically, Reed argues that Plaintiffs' Complaint does not allege that Reed used their service marks to confuse consumers, or made any false or misleading statements which caused consumers to be confused about the source of the information. Additionally, Reed argues that the pop-up advertisement at issue does not constitute use within the meaning of the Lanham Act because the pop-up advertisement appears in a separate window and does not direct consumers away from Plaintiffs' websites. In response, Plaintiffs argue that the pop-ups were

designed to lead prospective clients to believe that the advertisements were native to Plaintiffs' websites and, therefore, confused consumers as to the origin of the advertisement. Additionally, Plaintiffs argue that Reed made misleading statements to consumers by referring to IMS as a "firm" and stating that IMS had been randomly selected. This Court finds that Plaintiffs' Complaint fails to allege sufficient facts to state a claim against Reed for violation of the Lanham Act and, therefore, grants Reed's Motion to Dismiss Count I of the Complaint.

In order to set forth a claim for violation of Section 43(a) of the Lanham Act, a plaintiff must either assert that a defendant is causing confusion through improper use of a mark, or that the defendant is causing confusion through a misrepresentation of the origin or nature of the services advertised. *General Steel Domestic Sales, LLC*, 10-cv-01398, 2013 U.S. Dist. LEXIS 64932, *16-39 (10th Cir. May 7, 2013).

As an initial matter, Plaintiffs have not alleged Reed used any mark belonging to Plaintiffs which would form the basis of their Lanham Act claim. In other words, Plaintiffs fail to allege that Reed used any service mark, *i.e.* words, names, or symbols, of Plaintiffs' in order to confuse consumers. *1-800 Contacts, Inc. v. Lens.com,* 722 F.3d 1229, 1238 (10th Cir. 2013); *see also 1-800 Contacts, Inc. v. WhenU, Inc.,* 414 F.3d 400, 410 (2d Cir. 2005) (holding that "the fatal flaw [] is that WhenU's pop-up ads do not display the 1-800 trademark" and "absent an improper use of 1-800's trademark [], such conduct does not violate the Lanham Act.") Plaintiffs attempt to distinguish the holdings of *1-800 Contacts* and *WhenU* by citing *Playboy Enterprises Inc. v. Netscape Comm. Corp.*, 354 F.3d 1020 (9th Cir. 2004). The holding of *Playboy*, however, is readily distinguishable, as there it was clear that the defendant was using the trademark words "playboy" and "playmate" as search terms to generate the offending advertisements. *Id.* at 1024-25. No such allegations have been made here. Without allegations

that Reed used a service mark belonging to Plaintiffs there can be no finding of a Lanham Act violation.

Further, establishing *use* within the meaning of the Lanham Act is a threshold requirement, because "while any number of activities may be in commerce or create the likelihood of confusion, no such activity is actionable under the Lanham Act absent *use* of a trademark." *WhenU, Inc.,* 414 F.3d at 411 (emphasis added). Plaintiffs have not satisfied, and cannot satisfy, the threshold requirement of use. This Court finds that the pop-up advertisement at issue does not constitute "use" within the meaning of the Lanham Act because it appears in a separate window and does not divert or misdirect consumers away from Plaintiffs' websites. *See WhenU, Inc.,* 414 F.3d at 411. Indeed, the Court adopts the rationale of the *WhenU* court, which held:

> Not surprisingly, 1-800 cites no legal authority for the proposition that advertisements, software, or any other visual image that can appear on a C-user's computer screen must be authorized by the owner of any website that will appear contemporaneously with that image. The fact is that WhenU does not need 1-800's authorization to display a separate window containing an ad any more than Corel would need authorization from Microsoft to display its WordPerfect word-processor in a window contemporaneously with a Word word-processing window.

Id. at 412 (noting that the access allowing the pop-up was authorized "albeit unwittingly" by the consumer). Because Plaintiffs have failed to properly allege use, this Court need not reach the issue of whether any of Reed's communications with the consumers caused a likelihood of confusion sufficient to state a claim under the Lanham Act.

Even were the Court to reach the "likelihood of confusion" issue, Plaintiffs have failed to allege sufficient facts to show that Reed made any misrepresentation to consumers that would cause a likelihood of confusion. Plaintiffs assert that Reed made misrepresentations to consumers because "Reed told the prospect 'we have matched you with the following firm' that

5

Reed claimed had been randomly selected; when in fact, Reed essentially referred the prospect back to IMS." These statements, however, are irrelevant to the Lanham Act claim because they have no bearing on whether the customer was confused about the origin of the pop-up advertisement. The Lanham Act was intended to make actionable the deceptive and misleading use of marks. *Tennecp Auto Operating Co. v. Kingdom Auto Parts*, 410 Fed. Appx. 841, 845 (6th Cir. 2010). Thus, there must be a causal connection between the challenged statement and the alleged consumer confusion which caused the harm. *Medison Am., Inc. v. Preferred Med. Sys*. LLC, 548 F. Supp. 2d 567, 576 (W.D. Tenn. 2007) ("In order to maintain an action under the Lanham Act, Medison must show that the Preferred Medical defendants made false or misleading statements of fact about Medison's productions").

Viewing the facts as true and in the light most favorable to Plaintiffs, the claim against Reed for violation of the Lanham Act has not been sufficiently alleged. Further, because this Court finds that the pop-up advertisements at issue in this case do not constitute "use," no amendment could cure this pleading. Therefore, Reed's Motion to Dismiss Count I of Plaintiffs' Class Action Complaint is granted.

### B. Tortious Interference

Reed argues that Count III of the Class Action Complaint should be dismissed with prejudice because Plaintiffs have no prospective business relationship with consumers who visit Plaintiffs' websites, holding them akin to window shoppers on a busy commercial street. Additionally, Reed contends that even if such window-shopping gave rise to a prospective relationship, the Complaint is void of any facts which would amount to Reed using improper means to interfere with these prospective customers. Specifically, Reed asserts that without any allegations that Reed was involved with the creation or generation of the pop-up advertisement, Plaintiffs cannot allege that Reed utilized improper measures of interference. In opposition,

6

Plaintiffs argue the mere fact that consumers sought out their websites is sufficient to establish a prospective relationship. Plaintiffs also contend that Reed's alleged participation in the conspiracy alone is sufficient to establish improper means to interfere for purposes of a tortious interference claim.

Oklahoma and Tennessee laws impose substantially similar requirements to state a claim for tortious interference with a prospective business relationship: (1) an existing business relationship or prospective relationship with an identifiable class of third persons; (2) defendant's knowledge of that relationship; (3) the intent by defendant to cause a termination of the relationship; (4) the use of improper means; and (5) damages. *See Trau-Med of Am., Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 701 (Tenn. 2002) and *RSF Partners, LLC v. Silvermine Opportunity Funding, LLC,* Case No. 13-CV-361, 2014 U.S. Dist. LEXIS 12871 (N.D. Okla. Feb. 3, 2014). This Court finds that Plaintiffs have failed to satisfy the pleading requirements for elements one and four.

Plaintiffs' assertion that consumers' visits to their websites create a sufficient expectancy in a business relationship is without merit. Consumers' visits to their websites create nothing more than a mere hope that the consumers will ultimately contract with Plaintiffs for legal services. The law is clear that such a hope or wish is not sufficient to allege a prospective business relationship. *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995) (finding that plaintiff had no ongoing relationship with any of the investors, therefore, prospective business advantage was a "mere hope" and too speculative to support a tort claim). A plaintiff must show a likelihood or probability that a contract would have resulted. *Id.* Plaintiffs have not alleged facts which would allow the Court to make the inference that a contract with the visiting consumers is likely or probable.

Moreover, Plaintiffs fail to allege sufficient, non-conclusory facts, to establish that Reed used improper means to interfere. Plaintiffs do not allege that Reed participated in the creation or generation of the pop-up, which it alleges is the improper act that diverted customers away from its websites. Rather, Plaintiffs admit throughout the Complaint that IMS was solely responsible for the pop-up, *i.e.* the alleged interference. (See Compl. ¶¶ 2-3, 42-45, 93-93). Contrary to Plaintiffs' contention, both Oklahoma and Tennessee require that the alleged interferer have an intent to injure the plaintiff. See *Trau-Med of Am, Inc.,* 71 S.W.3d at 701 (tortious interference claims are only actionable if an action is "hurtful to another, intentional and without legal justification, it is malicious in the true legal sense") and *RSF Partners, LLC*, 2014 U.S. Dist. LEXIS 12871, at *10 (finding that the complaint "fails to plausibly state that Silvermine's action were malicious, intentional, illegal or otherwise improper"). Plaintiffs set forth no such allegations of intent against Reed.

Accordingly, Plaintiffs have failed to properly plead a tortious interference claim against Reed, and Reed's Motion to Dismiss Count III of the Class Action Complaint is granted..

### C. Civil Conspiracy

Finally, Reed argues that Plaintiffs fail to state a civil conspiracy claim because Plaintiffs do not allege that Reed agreed to be part of the alleged *unlawful acts* at issue in this case. Plaintiffs contend that Reed's contract with IMS and communications with the consumers via telephone and email is part of the overall scheme and, therefore, sufficient to state a claim for civil conspiracy against Reed.

To state a claim for civil conspiracy, Plaintiffs must allege: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. *See Zagorski*

*v. McAdam,* CIV-13-1209-D, 2014 U.S. Dist. LEXIS 89311, *16 (W.D. Okla. July 1, 2014); *Medapproach Holdings, Inc. v. Hawkins*, 3:11-cv-1199, 2012 U.S. Dist. LEXIS 178115, *21-22 (M.D. Tenn. Dec. 17, 2012). "[P]articipation in a civil conspiracy is not, by itself an actionable tort." *Nippert v. Jackson*, 860 F. Supp. 2d 554, 567 (M.D. Tenn. 2012). Rather, a civil conspiracy claim requires "the existence of an underlying tort or wrongful act committed by one or more of the conspirators in furtherance of the conspiracy." *Id.* This Court finds that Plaintiffs have not sufficiently alleged that Reed participated in a meeting of the minds to accomplish any unlawful act.

Plaintiffs' Complaint alleges that Reed and IMS had an agreement whereby Reed would receive leads and in turn, send those leads to IMS for distribution among the lawyers with whom IMS worked. In exchange, Reed would receive a service fee per lead. Importantly, the Complaint does not allege that Reed had anything to do with, or even knew about, the pop-up advertisement appearing on Plaintiffs' websites -- the unlawful act upon which Plaintiffs' tortious interference and Lanham Act claims are based. The law in this Circuit is clear that without allegations that Reed knew about and/or agreed to participate in a scheme which involved the unlawful act, there can be no finding of civil conspiracy. *Delli v. United States*, 352 U.S. 232, 242 (1957) rev'd on other grounds; *United States v. Evans*, 970 F.2d 663, 670 (10th Cir. 1992) ("mere knowledge of illegal activity, even in conjunction with participation in a small part of the conspiracy, does not by itself establish that a person has joined in the grand conspiracy"); *Treppel v. Biovail Corp*., 03 Civ. 3002, 2005 U.S. Dist. LEXIS 1811, *19 (S.D.N.Y. Aug. 30, 2005) (dismissing conspiracy to defame claims against non-actors because plaintiff failed to allege any independent culpable behavior on their part to link them to the alleged defamatory statement). Plaintiffs point to the alleged contractual arrangement between

Reed and IMS to generate business. But nowhere do Plaintiffs allege that Reed had any knowledge of the pop-ups or how the leads were being generated. Such an ordinary business relationship, without more, does not constitute a conspiracy. *United States v. Allied Asphalt Paving Co.,* 451 F. Supp. 804, 814-15 (N.D. Ill. 1978) (finding defendant's ordinary business contacts with the conspirators, *i.e.* a telephone call and meetings during which ordinary business decisions were discussed, did not indicate that he was aware of the fraudulent plan). Plaintiffs must plead that Reed had a specific intent to commit the unlawful or illegal act. *United States v. Blair*, 54 F.3d 639, 642 (10th Cir. 1995) (conspiracy requires a specific intent to further the unlawful activity which is the object of the conspiracy). To the contrary, Plaintiffs' Complaint makes clear that Reed had no knowledge of the alleged underlying unlawful activities.

Therefore, this Court finds that Plaintiffs failed to allege a claim of civil conspiracy against Reed, and therefore, Reed's Motion to Dismiss Count IV of the Class Action Complaint is granted.

### III. CONCLUSION

Accordingly, Plaintiffs' Complaint fails to state claims for violation of the Lanham Act (Count I), tortious interference (Count III) and civil conspiracy (Count IV) against Defendant Reed Elsevier Inc. and Defendant's Motion to Dismiss is granted in its entirety.

**IT IS SO ORDERED this 2nd day of March, 2015.**

James H. Payne
United States District Judge
Eastern District of Oklahoma